J-A14028-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTHONY LOURIDO | : | No. 1289 EDA 2025 |

Appeal from the Order Entered April 17, 2025
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0001353-2024

BEFORE:  DUBOW, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED JULY 15, 2026**

The Commonwealth of Pennsylvania appeals from the trial court's April 17, 2025, order, which (1) granted Anthony Lourido's (Defendant) motion to quash the criminal information against him; (2) denied the Commonwealth's motion for reconsideration; (3) vacated its April 3, 2025, order, which stayed its prior order; and (4) reinstated its original March 13, 2025, order granting Defendant's motion to quash.  After careful review, we affirm.

In its opinion, the trial court detailed the relevant factual history:

> On September 21, 2023, Trooper Jeremy Knell ("Trooper Knell") of the Pennsylvania State Police [(PSP)] was on duty in full uniform in a marked patrol vehicle.  While patrolling in Tinicum Township, Delaware County, Trooper Knell observed a black Nissan with a broken taillight and dark window tint.  Trooper Knell conducted a traffic stop of the vehicle.  [Defendant] was in the passenger seat of the vehicle[,] and his sister, Denise Lourido[] ("Ms. Lourido")[,] was driving the vehicle.  Ms. Lourido could not produce a driver's license.  Trooper Knell testified that the occupants of the vehicle appeared to be extremely nervous.

Defendant did not say anything when Trooper Knell approached the passenger side of the vehicle. When Trooper Knell asked Defendant to identify himself, Defendant told Trooper Knell his name was "Daniel Lourido."

Trooper Knell observed two clear yellow vials[1] in one of the cup holders by the gear shifter of the vehicle. Trooper Knell could not see what was in the clear yellow vial[s] and could not remember which cupholder the vials were in when he saw them. Ms. Lourido was the registered owner of the vehicle. Ms. Lourido and Defendant were removed from the car. Trooper Knell asked Ms. Lourido for consent to search the vehicle[,] which she granted.

Trooper Knell began searching the vehicle and testified that when "… [t]he glove box was folded open, you could see a baggie sticking out…[.]" Trooper Knell testified that he "removed the glovebox, and [the baggies] were back behind the glovebox." Trooper Knell testified that when he "push[ed] the sides in, [the] glove box falls out. Drugs were behind the glovebox." Hidden behind the glove box were 160 bags of fentanyl[,] which were not visible by just opening the glove compartment. No photographs were taken at the scene or produced by the Commonwealth as evidence. Trooper Knell's testimony was credible.

The drugs found under the dashboard behind the glove compartment were tested and determined to be xylazine and fentanyl. Trooper Knell asked Defendant and Ms. Lourido who the drugs belonged to. Ms. Lourido said the drugs belonged to her. Defendant did not make any statements about the drugs found in the vehicle. No rubber bands, scales, cash[,] or tally sheets were found in the vehicle. No drugs or drug paraphernalia were found on Defendant's person. There was no evidence of Defendant's DNA or fingerprints on any of the contraband found in the vehicle. There was no evidence produced that Defendant had used or was under the influence of drugs. The only evidence produced by the Commonwealth were the vials and the baggies.

… After the drugs were found, Defendant told Trooper Knell his real name while he was being fingerprinted at [PSP] barracks in Pennsylvania. Trooper Knell said that he told Defendant before

_____

[1] Trooper Knell indicated the vials were less than an inch tall and had flip-top lids. N.T. (preliminary hearing), 3/20/23, at 16-17.

fingerprinting him that he was under investigation[,] but does not remember when he told [Defendant] that. There is no evidence that Defendant had been advised he was the subject of an official investigation when he gave Trooper Knell a false name.

Trial Court Opinion, 9/4/25, at 1-4 (footnote added; citations to record omitted).

Defendant was arrested and charged with possession of a controlled substance (simple possession) (fentanyl), possession with intent to deliver a controlled substance (PWID) (160 bags of heroin/fentanyl),[2] possession of drug paraphernalia (clear yellow vials), and false identification to law enforcement.[3] **See** Information, 5/1/24. After a preliminary hearing, all charges were held over for trial.

On December 16, 2024, Defendant filed a motion to quash/petition for writ of *habeas corpus* (motion to quash),[4] arguing the Commonwealth had

_____

[2] Though the criminal information indicates that the PWID charge relates to heroin and fentanyl, nothing in the record suggests that heroin was recovered during the search. During the preliminary hearing, the Commonwealth introduced as evidence a laboratory report identifying the controlled substances as xylazine and fentanyl. N.T., 3/20/23, at 8. The report itself is not contained in the certified record, but Trooper Knell identified the report and explained the results during the hearing. **See id.**

[3] 35 Pa.C.S.A. §§ 780-113(a)(16), (30), (32); 18 Pa.C.S.A. § 4914.

[4] "A pre-trial *habeas corpus* motion is the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case." **Commonwealth v. Dantzler**, 135 A.3d 1109, 1112 (Pa. Super. 2016) (*en banc*). Instantly, the trial court explained that "[i]n Delaware County, to seek relief from the … finding that a *prima facie* case has been made, the writ of *habeas corpus* filing is also known as a motion to quash." Trial Court Opinion, *(Footnote Continued Next Page)*

failed to establish a *prima facie* case that Defendant committed the charged offenses. The trial court conducted a hearing on Defendant's motion to quash on February 3, 2025. At that time, the Commonwealth stated it did not intend to supplement the record and would rely on the notes of testimony taken during the preliminary hearing. N.T., 2/3/25, at 3-4. After the hearing, the Commonwealth filed a response to Defendant's motion to quash. On March 13, 2025, the trial court granted Defendant's motion to quash the criminal information.

The Commonwealth promptly filed a motion for reconsideration. The trial court granted reconsideration and stayed its prior order granting Defendant's motion to quash. On April 14, 2025, the trial court conducted a hearing on the Commonwealth's motion for reconsideration.[5] Shortly thereafter, on April 17, 2025, the trial court entered an order (1) granting Defendant's motion to quash, (2) denying the Commonwealth's motion for reconsideration, (3) vacating the April 3, 2025, order that stayed the prior order, and (4) reinstating its original March 13, 2025, order, which granted Defendant's motion to quash.

---

9/4/25, at 7 (some capitalization modified). We refer to Defendant's filing as a motion to quash, as it is the term used most frequently by the parties.

[5] The transcripts of this hearing do not appear in the certified record.

The Commonwealth timely appealed.[6]  On May 21, 2025, the trial court issued an order directing the Commonwealth to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days, and advising that any issue not included in the concise statement would be deemed waived.  **See** Order, 5/21/25.  The docket reflects that the clerk of courts served the concise statement order on both counsel for the Commonwealth and Defendant's counsel on May 22, 2025.

Nevertheless, the Commonwealth did not file a Rule 1925(b) concise statement until approximately two months later, on July 11, 2025.  On the same date, the Commonwealth filed a motion for an extension of time to file a *nunc pro tunc* Rule 1925(b) concise statement.[7]  The Commonwealth cited

---

[6] The Commonwealth "certifie[d] in the notice of appeal that the order will terminate or substantially handicap the prosecution."  Pa.R.A.P. 311(d). Additionally, "an order quashing a charge is unquestionably 'final' as to that charge…."  **Commonwealth v. Karetny**, 880 A.2d 505, 512 (Pa. 2005); **see also** Pa.R.A.P. 341(a) (stating that "an appeal may be taken as of right from any final order").

[7] Though the Commonwealth filed a motion for extension of time to file a Rule 1925(b) concise statement, it failed to do so within the 21-day time limit. Pa.R.A.P. 1925(b)(2) (providing that the ordering judge must allow the appellant at least 21 days to file and serve a concise statement, and an appellant may seek an extension of time for filing a concise statement for good cause); **see also Commonwealth v. Gravely**, 970 A.2d 1137, 1145 (Pa. 2009) ("[A]n appellant who seeks an extension of time to file a Statement must do so by filing a written application with the trial court, setting out good cause for such extension, and requesting an order granting the extension. The failure to file such an application within the 21-day time limit set forth in Rule 1925(b)(2) will result in waiver of all issues not raised by that date." (emphasis omitted)).

the possibility that the Commonwealth was never served with the order, or that the order was misplaced during staff transitions. On July 24, 2025, the trial court entered an order concluding that it lacked jurisdiction to consider the Commonwealth's motion, and that the Commonwealth had waived any possible issues for review by failing to file a timely Rule 1925(b) concise statement.

Thus, as a preliminary matter, we must determine whether the Commonwealth preserved any issues for appellate review. Only issues that have been properly raised in a timely-filed Rule 1925(b) concise statement are preserved for appellate review. **See** Pa.R.A.P. 1925(b)(4)(vii); **see also Commonwealth v. Burton**, 973 A.2d 428, 433 (Pa. Super. 2009) (*en banc*) (explaining that the "untimely filing of the 1925 concise statement is the equivalent of a complete failure to file."). Rule 1925(c)(3) permits this Court to remand to the trial court if a counseled appellant filed an untimely concise statement and the trial court did not file an opinion. Pa.R.A.P. 1925(c)(3). However, if the trial court files an opinion addressing the issue raised in an untimely Rule 1925(b) concise statement, remand is not necessary. **Burton**, 973 A.2d at 433; **Commonwealth v. Baker**, 311 A.3d 12, 18 (Pa. Super. 2024) (declining to find waiver based on the Commonwealth's untimely concise statement, and addressing the issue on its merits, "where the trial court had adequate opportunity to prepare an opinion addressing the issue raised").

Here, despite finding that the Commonwealth had waived its issue for appellate review, the trial court issued a Rule 1925(a) opinion addressing the merits of the Commonwealth's claim. Accordingly, we may consider the Commonwealth's claim. *See Baker*, *supra*.

The Commonwealth raises the following issue for review:

> Whether the trial court erred in granting the [D]efendant's motion to quash[,] where the evidence presented by the Commonwealth established a *prima facie* case on the charges of [PWID], [simple] possession …, possession of drug paraphernalia, and false identification to law enforcement officer?

Commonwealth Brief at 3.

The Commonwealth argues the trial court erroneously concluded that the Commonwealth had failed to present *prima facie* evidence to support the charges against Defendant. *See id.* at 15-20. We begin by detailing our standard of review and the general legal precepts applicable to the Commonwealth's claim.

We note the following concerning motions to quash:

> A motion to quash is an appropriate means for raising defects apparent on the face of the information or other defects which would prevent prosecution. It is neither a guilt[-]determining procedure nor a pre-trial means for determining the sufficiency of the Commonwealth's evidence. Neither the adequacy nor competency of the Commonwealth's evidence can be tested by a motion to quash the information.

*Commonwealth v. Kane*, 188 A.3d 1217, 1227 (Pa. Super. 2018) (citation omitted).

Whether the Commonwealth presented sufficient evidence to establish a "*prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." **Dantzler**, 135 A.3d at 1112 (citing **Commonwealth v. Karetny**, 880 A.2d 505, 513 (Pa. 2005)). Accordingly, "we are not bound by the legal determinations of the trial court." **Id.**

"When reviewing a motion to quash on the basis of failure to establish a *prima facie* case, the trial court looks to the evidence presented at the preliminary hearing." **Commonwealth v. Ripley**, 833 A.2d 155, 160 (Pa. Super. 2003). "The Commonwealth establishes a *prima facie* case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury." **Commonwealth v. Smith**, 317 A.3d 1053, 1058 (Pa. Super. 2024) (citation omitted).

> The *prima facie* standard requires that the Commonwealth produce evidence of the existence of each and every element of the crime charged; consequently, absence of evidence as to the existence of a material element is fatal. This standard does not require that the Commonwealth prove the elements of the crime beyond a reasonable doubt nor that evidence is available that would prove each element at trial beyond a reasonable doubt.

**Ripley**, 833 A.2d at 160 (citations omitted). "[T]he weight and credibility of the evidence are not factors at this stage…." **Smith**, 317 A.3d at 1058 (citation omitted). Additionally, we examine "the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth." **Dantzler**, 135 A.3d at 1112.

We now consider the charged crimes, beginning with false identification to law enforcement authorities, which the Crimes Code defines as follows:

> A person commits an offense if he furnishes law enforcement authorities with false information about his identity after being informed by a law enforcement officer who is in uniform or who has identified himself as a law enforcement officer that the person is the subject of an official investigation of a violation of law.

18 Pa.C.S.A. § 4914(a). "Literally read, the statute … does not make it illegal to provide a law enforcement authority false information as to one's identity unless and until one is first apprised that he is the subject of an official investigation of a violation of law." *Commonwealth v. Barnes*, 14 A.3d 128, 131 (Pa. Super. 2011); *see also Commonwealth v. Kitchen*, 181 A.3d 337, 345 (Pa. Super. 2018) (*en banc*) (stating that "the Commonwealth must prove that the individual was *told* by police that he … was under investigation, and that must occur prior to the individual's presentment of false identity information." (emphasis in original)).

The Commonwealth contends that by virtue of explaining the reason for the vehicle stop, Trooper Knell effectively alerted Defendant that he was the subject of an official investigation. Commonwealth Brief at 21; *see also id.* ("The reasonable inference, therefore, is that [Defendant] provided the false name … after the trooper pulled the vehicle over, identified himself as a law enforcement officer, and explained the reason for the car stop…."). The Commonwealth therefore argues that Defendant was informed that he was

the subject of an investigation for Motor Vehicle Code violations prior to providing a false name.  *Id.* at 22.[8]

Instantly, the trial court concluded that the Commonwealth failed to set forth a *prima facie* case because Trooper Knell did not remember whether he had informed Defendant that he was the subject of an official investigation before Defendant supplied a false name.  Trial Court Opinion, 9/4/25, at 11.  Upon our review of the record, we agree with the trial court's conclusion.

When Trooper Knell approached the vehicle and requested identification, Defendant identified himself as "Daniel Lourido."  N.T., 3/20/23, at 7.  Trooper Knell did not specify whether he asked Defendant to identify himself before or after he informed Ms. Lourido of the reason for the traffic stop.  *But see id.* at 13 (Trooper Knell indicating that Defendant did not speak to him upon his initial approach).  Trooper Knell testified that after the vehicle search was completed, Defendant and Ms. Lourido were taken into custody and transported to the PSP barracks in Philadelphia.  *Id.* at 10.  Trooper Knell testified, "Upon fingerprinting [Defendant], he told me his real name."  *Id.*

From the foregoing testimony, it is certainly reasonable to infer that Defendant was aware that he was the subject of an official investigation for a violation of law when he was taken into custody, transported to the PSP

_____

[8] During oral argument in this matter, the Commonwealth conceded this issue. We nevertheless briefly address the merits of Appellant's claim.

barracks, and fingerprinted.  However, Defendant provided a false name *prior* to the vehicle search and his subsequent arrest.

We are additionally unpersuaded that Trooper Knell's statement regarding the reason for the traffic stop sufficiently informed Defendant, *a passenger in the vehicle*, that he was the subject of an official investigation for a violation of law.  *Cf. Commonwealth v. Flamer*, 848 A.2d 951, 953 (Pa. Super. 2004) (concluding evidence was sufficient to sustain false identification to law enforcement conviction where the appellant, the *driver* of the vehicle subject to a traffic stop, supplied a false name after the police officer approached and informed the appellant of the reason for the stop).  The reason for the traffic stop, as explained by Trooper Knell, was apparent violations of the Motor Vehicle Code (*i.e.*, an inoperable taillight and window tinting).  As neither the vehicle's owner nor the driver, Defendant could not personally be held responsible for the violations.  Thus, the Commonwealth did not provide *prima facie* evidence that law enforcement informed Defendant he was under an official investigation before he provided incorrect identifying information.

We now turn to the possession-related charges.  The Controlled Substance, Drug, Device and Cosmetic Act (the act) prohibits, *inter alia*, the following:

> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or

- 11 -

pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

* * *

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

* * *

(32) The use of, or possession with intent to use, drug paraphernalia[9] for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(16), (30), (32) (footnote added).

"[I]n narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." *Commonwealth v. Roberts*, 133 A.3d 759, 767 (Pa. Super. 2026) (citation omitted). Instantly, because no contraband was found on Defendant's person, the Commonwealth filed the possession-related charges under a theory of constructive possession. *See* Commonwealth Brief at 19.

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that

_____

[9] As defined by the act, drug paraphernalia includes equipment, products, and materials used for packaging, storing, or concealing controlled substances. *See* 35 P.S. § 780-102.

- 12 -

possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

**Smith**, 317 A.3d at 1059 (citation omitted). Additionally, "possession of an illegal substance need not be exclusive; two or more can possess the same drug at the same time." **Id.** (citation omitted).

Instantly, only Trooper Knell testified at the preliminary hearing. Trooper Knell testified that he initiated the traffic stop based on the vehicle's inoperable rear taillight and dark window tint. N.T., 3/20/23, at 5, 11. Trooper Knell approached the vehicle on the passenger side, where Defendant was seated. **Id.** at 6, 11, 12. According to Trooper Knell, Defendant appeared "extremely nervous," was shaking, and avoided eye contact. **Id.** at 6; **see also id.** at 13.

Trooper Knell testified that while speaking with Defendant and Ms. Lourido, he observed "two clear, yellow vials with suspected crack cocaine right by the gear shifter." **Id.** at 7. **But see id.** at 16, 21 (Trooper Knell later stating that while he could identify the vials themselves from outside the vehicle, he could not see their contents until he conducted a search). Trooper Knell clarified that the vials were located inside of a cupholder, which was located between the driver and front passenger seats. **Id.** at 16.

After observing the vials, Trooper Knell asked Ms. Lourido to exit the vehicle. **Id.** at 7. Trooper Knell then requested consent to search the vehicle,

- 13 -

which Ms. Lourido granted, and directed Defendant to exit the vehicle. ***Id.***

The search revealed 160 bags of fentanyl behind the glove box. ***Id.*** at 8. The

following exchange occurred concerning the location of the bags:

> Q [Defense Counsel]: You also mentioned that [while] conducting the search, that you found 160 bags behind the glovebox. What did you mean by behind the glovebox?
>
> A [Trooper Knell]: The glovebox was folded open, you could see a baggie sticking out. I removed the glovebox, and they were back behind the glovebox.
>
> Q: What do you mean you removed the glovebox?
>
> A: Push the sides in, glovebox falls out. Drugs were behind the glovebox.
>
> Q: So, it's fair to say … if you had just opened the glovebox as it's normally meant to be opened, you couldn't see them. You had to actually pull the glovebox out.
>
> A: You could see the top of the bag.
>
> Q: Peeking through, right? But they weren't placed in the normal glovebox compartment?
>
> A: No.

***Id.*** at 17-18.

Here, the trial court concluded the Commonwealth failed to present a

*prima facie* case for Defendant's possession-related charges because there

was

> no basis to infer that Defendant knew of the contraband in the vehicle. Defendant was not the driver or owner of the vehicle. There was no evidence tending to show Defendant looked at, handled or otherwise indicated any knowledge of the two vials in one of the cupholders or the bags hidden behind the glove compartment. No contraband of any kind was found on

Defendant's person. Defendant made no statements regarding the contraband. … In this case, no evidence was presented to show that Defendant knew of the presence of the contraband, only that he was sitting in proximity to it. The Commonwealth did not prove that [] Defendant had the requisite intent to control the contraband.

Trial Court Opinion, 9/4/25, at 10 (citation and paragraph break omitted).

We agree with the trial court's reasoning as it relates to the charges of PWID and simple possession.[10, 11] During the preliminary hearing, Trooper Knell identified Defendant as a passenger in a vehicle registered to Ms. Lourido. There is nothing in Trooper Knell's testimony to suggest that Defendant had any knowledge of the packaged drugs inside of Ms. Lourido's vehicle. Indeed, Trooper Knell's own testimony indicates the drugs were not contained <u>within</u> the glove compartment, which could, in theory, be easily accessed by a passenger. Instead, Trooper Knell stated that only the top portion of a bag was visible when the glove compartment was opened in the usual manner. **The entire glovebox needed to be removed in order to access the packaged drugs**.

_____

[10] The parties stipulated that an expert, if called to testify, would opine that the quantity of packaged drugs would be indicative of an intent to deliver. N.T., 3/20/25, at 9.

[11] We observe that neither the criminal information nor the preliminary hearing testimony makes clear whether the simple possession charge relates to the fentanyl and xylazine found in bags behind the glove compartment, or if it relates to anything that may have been found within the two vials. In its brief, the Commonwealth appears to argue the simple possession charge relates to the 160 bags of fentanyl. *See* Commonwealth Brief at 19.

Trooper Knell provided no indication that Defendant moved toward the glove compartment or made any other furtive movements when Trooper Knell approached the vehicle. *Cf. Commonwealth v. Hopkins*, 67 A.3d 817, 821 (Pa. Super. 2013) (concluding the evidence was sufficient to sustain the appellant's possession of a controlled substance conviction—under a theory of constructive possession—where police observed another individual throw a brick of heroin onto the floor of the appellant's vehicle, and appellant (the driver) attempted to hide the heroin in the space between the driver's seat and the center console). Nor did Defendant make any inculpatory statements to Trooper Knell. Further, we are unpersuaded by the Commonwealth's argument that Defendant's apparent nervousness requires an inference that he had knowledge of the drugs. Nervousness may be a consideration under the totality of the circumstances, but the Commonwealth offers no case law to suggest that it may be the only consideration.

The Commonwealth repeatedly asserts that the two vials contained cocaine and were within Defendant's reach. *See* Commonwealth Brief at 19, 26, 28; *see also id.* at 19 (asserting that for the purpose of the simple possession and possession of drug paraphernalia charges, "the Commonwealth met its burden based on the two vials of cocaine located in plain view next to [Defendant] alone."). There is no support in the record for the Commonwealth's assertion that the vials contained cocaine. The preliminary hearing transcript contains a single statement, by Trooper Knell,

that the vials contained "suspected crack cocaine."  N.T., 3/20/23, at 7.

However, based on Trooper Knell's statements regarding the laboratory

report, only fentanyl and xylazine were identified.[12]  *Id.* at 8.  From the

preliminary hearing testimony, it is unclear whether any suspected narcotics

were, in fact, recovered from the two vials.  *See id.* (Trooper Knell testifying

the search revealed "two yellow[] vials by the gear shifter, and then 160 bags

of fentanyl behind the glove box").

We acknowledge that our standard of review requires us to draw

reasonable inferences in favor of the Commonwealth.  *See Dantzler*, 135

A.3d at 1112.  However, to accept the Commonwealth's arguments in the face

of the meager preliminary hearing transcript before us would be to draw

*un*reasonable, unsupported inferences in favor of the Commonwealth.

Accordingly, we agree that the Commonwealth failed to establish *prima facie*

evidence of PWID and simple possession.

Finally, turning to the possession of drug paraphernalia charge, our

review confirms that the Commonwealth failed to set forth *prima facie*

evidence, albeit for a different reason than that advanced by the trial court.

*See Commonwealth v. Allshouse*, 36 A.3d 163, 182 (Pa. 2012) ("[A]n

---

[12] We reiterate that the laboratory report is not contained in the certified record.  *See Commonwealth v. Lopez*, 57 A.3d 74, 82 (Pa. Super. 2012) (stating that "it is an appellant's duty to ensure that the certified record is complete for purposes of review.") (citation and brackets omitted).

appellate court has the ability to affirm a valid judgment or verdict for any reason appearing as of record.") (citation omitted).

Instantly, the paraphernalia at issue is the two vials. *See* Information, 5/1/24. Trooper Knell testified that the vials were located in the vehicle's cupholder, "right by the gear shifter." N.T., 3/20/23, at 7; *see also* 15-16 (clarifying that the gear shift is centered between the driver and passenger seats). Given the location of the two vials, essentially equidistant between Ms. Lourido and Defendant, the trial court could reasonably have found that the Commonwealth offered *prima facie* evidence that Defendant possessed the vials under a theory of constructive possession. *See Smith*, 317 A.3d at 1059 (explaining that "constructive possession may be found in either or both actors if contraband is found in an area of joint control and equal access.").

However, from the record before us, we cannot conclude that the Commonwealth provided *prima facie* evidence that the vials were, in fact, drug paraphernalia. As set forth above, Trooper Knell's testimony did not clearly state that narcotics were recovered from the vials. While Trooper Knell testified that he observed the vials immediately upon approaching the vehicle, he acknowledged that he was unable to see the vials' contents from his position outside the vehicle. N.T., 3/20/23, at 16. **Significantly, Trooper Knell offered no testimony that, based on his experience as a police officer, he had reason to believe the vials were associated with packaging, storing, or concealing controlled substances.** *See* 35 P.S.

§ 780-102. From the limited evidence of record, we discern no error by the trial court in concluding that the Commonwealth failed to establish *prima facie* evidence supporting the possession of drug paraphernalia charge.

Based on the foregoing, we affirm the trial court's order granting Defendant's motion to quash the criminal information against him.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2026